# EXHIBIT A

FILED: ROCKLAND COUNTY CLERK 06/29/2016 01:29 PM

NYSCEF DOC. NO. 1

INDEX NO. 032359/2016

RECEIVED NYSCEF: 06/29/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

JAMES MACLEARY,

                         Plaintiff,

       -against-

CORAM LLC., CORAM CVS/SPECIALTY INFUSION
SERVICES d/b/a CVS

                          Defendants.

Index No. :

**SUMMONS**

The Plaintiff designates
Rockland County as the place of
Venue.

**TO THE ABOVE NAMED DEFENDANTS:**

     **You are hereby summoned** to answer the complaint in this action, and to serve a copy of your answer, or if the complaint is not served with a summons, to serve a notice of appearance on the Plaintiff's attorneys within twenty days after service of this summon, exclusive of the day of service, where service is made by delivery upon you personally within the state, or within thirty days after completion of service where service is made in any other manner. In case if your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

The basis of venue is Plaintiff's domicile.

                       Yours, etc.

                       By: Daniel S. Szalkiewicz, Esq.
                       **Daniel Szalkiewicz & Associates, P.C.**
                       *Attorneys for Plaintiff*
                       7 Dey Street, Suite 900B
                       New York, New York 10007
                       Tel: (212) 706-1007
                       Fax: (914) 500-2315
                       *daniel@lawdss.com*

1

To:     CORAM CVS/Specialty Infusion Services
        555 17TH Street, Suite 1500
        Denver, CO 80202

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

JAMES MACLEARY,

                              Plaintiff,

          -against-

CORAM LLC. d/b/a CORAM CVS/SPECIALTY
INFUSION SERVICES d/b/a CVS
                              Defendants.

**NOTICE OF ELECTRONIC
FILING**

Index No. :

     PLEASE TAKE NOTICE that the matter captioned above, which has been commenced by filing of the accompanying documents with the County Clerk, is subject to mandatory electronic filing pursuant to Section 202.50bb of the Uniform Rules for the Trial Courts. This notice is being served as required by Subdivision (b)(3) of that Section.

     The New York State Courts Electronic Filing System ("NYSCEF") is designed for the electronic filing of documents with the County Clerk and the court, and for the electronic service of those documents, court documents, and court notices upon counsel and self-represented parties. Counsel and/or parties who do not notify the court of a claimed exemption (see below) as required by Section 202.5-bb(e) must immediately record their representation within the e-filed matter on the Consent page in NYSCEF. Failure to do so may result in an inability to receive electronic notice of document filings.

     Exemptions from mandatory e-filing are limited to: 1) attorneys who certify in good faith that they lack the computer equipment and (along with all employees) the requisite knowledge to comply; and 2) self-represented parties who choose not to participate in e-filing. For additional

3

information about electronic filing, including access to Section 202.5-bb, consult the NYSCEF

website at www.nycourts.gov/efile or contact the NYSCEF  Resource Center at 646- 386-3033

or efile@courts.state.ny.us.

Dated: New York, New York

June 29, 2016


DANIEL S. SZALKIEWICZ, ESQ.
7 Dey Street, Suite 900B
New York, New York 10007
Tel: (212) 706-1007
Fax: (914) 500-2315
*daniel@lawdss.com*

4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

| | |
|---|---|
| JAMES MACLEARY,<br><br>                               Plaintiff,<br><br>          -against-<br><br>CORAM LLC. d/b/a CORAM CVS/SPECIALTY<br>INFUSION SERVICES d/b/a CVS<br><br>                               Defendants. | **COMPLAINT**<br><br>Index No. : |

Plaintiff, through his attorneys **Daniel Szalkiewicz & Associates, P.C.**, complaining of the defendant CORAM LLC. d/b/a CORAM CVS/SPECIALTY INFUSION SERVICES d/b/a CVS (hereinafter "CVS" or "Defendant") herein, respectfully shows to the Court, and alleges, upon information and belief as follows:

## NATURE OF THE ACTION

1.     This action arises out of the discriminatory and harassing conduct of Coram/CVS Health, a well-known industry leader in the home infusion industry.

2.     Defendant CVS boasts that it is "committed to serving [our] customers, and we know that patient and referral satisfaction is essential to providing high quality service." Defendant goes as far as to assert that the root of its name in Latin, *Cor*, "means open, face to face — a philosophy Coram embraces both internally and in service to our patients." CVS attempts to "ensure high-quality care, education, and support" to individuals suffering from illness.

5

3.      However, based upon their treatment of their own employee who fell critically ill and became partially paralyzed because of it, it seems evident that they do not practice what they preach.

4.      More so, Defendant's pretextual excuse for terminating Plaintiff was nothing more than a violation of his constitutional First Amendment right- a consensual conversation on the social media platform Facebook with a co-worker.  This conversation was protected by New York Labor Law §201-d, as a personal recreational activity.

5.      CVS's termination of Mr. MacLeary based on his conversation was wrought with gender, disability, and sex discrimination, as the female employee was not penalized.

6.      Mr. MacLeary is now forced to bring this action because Defendant CVS's conduct is the epitome of unlawful discrimination based on Mr. MacLeary's disability and gender, in violation of the New York State Human Rights Law, Executive Law§ 296 et seq. ("NYSHRL"), the Americans with Disabilities Act, and the New York State Labor Law.

7.      Mr. MacLeary seeks back and front pay; compensatory and punitive damages; attorneys' fees, costs and expenses; pre- and post-judgment interest; and other appropriate damages pursuant to the NYSHRL, New York Labor Law, Federal Law, and other New York state law.

## THE PARTIES

8.      Plaintiff James MacLeary (hereinafter "Mr. MacLeary" or "Plaintiff") was, and still is, a resident of Rockland County, State of New York.

9.      Mr. MacLeary was, at all relevant times, employed by Defendants CVS.

10.      Defendant CVS is, and was at all times relevant, a foreign limited liability

6

corporation, duly authorized to conduct business in the State of New York.

11.     Defendant CVS conducts business in the State of New York, and maintains offices in Albany, Amherst, Kingston, Plainview, Rego Park, and Syracuse, New York.

12.     Mr. MacLeary was, at all relevant times, an "employee" within the meaning of the New York State and City Human Rights laws.

13.     At all times material to this Complaint, the individual officers, directors, supervisors, managers, employees and/or agents mentioned herein, acted within the scope of their duties as officers, directors, supervisors, managers, employees and or agents of Defendants.

14.     There is no pending administrative proceeding at the time of the filing of this Complaint.

15.     This action arises out of the discriminatory and harassing actions of Defendant CORAM/CVS HEALTH (hereinafter "CVS"), a well known industry leader in the home infusion industry.

## JURISDICTION AND VENUE

16.     This Court has personal jurisdiction over Defendant pursuant to CPLR §§ 301 and 302. Defendant CVS does regular and substantial business within New York State and maintains an office in New York, as such Defendant is amenable to suit in New York.

17.     Venue belongs in Rockland County, based on Plaintiff's place of residence.

7

## RELEVANT FACTUAL BACKGROUND

18.　　Plaintiff MacLeary began working for CVS in July of 2009, when he was brought on as a Senior Branch Manager working out of their Totoway, New Jersey location. At the time, Plaintiff was a healthy, able-bodied employee.

19.　　As an employee, Plaintiff underwent multiple yearly reviews conducted by CVS. Each review indicated that Plaintiff met and/or exceeded their expectations. Under his management, his store enjoyed stellar ratings and a steady increase in profits. As in indication of CVS's approval, Plaintiff was routinely given salary increases based on his performance, as well as bonuses.

20.　　In late September, 2014 Plaintiff began to suffer from shortness of breath and weakness, which seemed to be for no apparent reason.

21.　　On October 2, 2014 Plaintiff went to the hospital, was admitted, and came to learn that he suffered from Gillian Barre Syndrome, an extremely rare condition in which the body's immune system attacks the nerves.

22.　　Within hours of being admitted, Plain tiff was unable to move, and suffered from total paralysis. He was placed in intensive care for about six days.

23.　　Afterward, Plaintiff was admitted to Helen Hayes Rehabilitation Hospital. He spent about 48 days in rehabilitation, where he underwent intensive physical and occupation therapy, as it was necessary for Plaintiff to re-learn how to walk and use his muscles.

24.　　After such an intense, draining recovery, Plaintiff was cleared to return to work in January 2015. Despite great progress, Plaintiff still had difficulty walking properly and had to utilize a crutch to aid him.

8

25.     Upon his return, Plaintiff began to notice a shift in the way he was treated by his employer.  He noticed a decrease in responsibilities given to him, which in turn led to financial losses and decreased professional development. However, Plaintiff continued on, and carried out any and all tasks given to him with the same dedication and vigor as before he fell ill.

26.     In May of 2015, Plaintiff engaged in a conversation with a colleague on the social media platform Facebook.  The post talked about going fishing and going to the beach together. This conversation took place on Plaintiffs personal time, outside of his place of employment.

27.     However, on June 29, 2015, over a month after Plaintiff had this conversation with his colleague, Plaintiff's manager, accompanied by the regional Human Resources representative, and approached Plaintiff while he was in his office.  At that time, Plaintiff was informed that the company had received an anonymous complaint on the CVS Compliance Hotline about the conversation.

28.     Without any investigation, and in complete disregard for CVS' own policies and procedure as set forth in the Employee manual, Plaintiff was terminated.

29.     CVS did not conduct an investigation concerning the female employee's behavior.  Even more egregious is the fact that despite both employees's engaging in this conversation, the female employee suffered no repercussions for her involvement.

30.     Furthermore, Plaintiff notes that several other employees, including those holding supervisory positions, have engaged in ongoing harassing conduct and have suffered no consequences.  The only difference between Plaintiff and the others is the distressing fact that Plaintiff suffers from a disability.

9

## AS AND FOR A FIRST CAUSE OF ACTION
## DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF THE NEW
## YORK STATE HUMAN RIGHTS LAW

31.     Plaintiff repeats, reiterates and realleges every allegation contained in paragraphs 1 through 30 with the same force and effect as through more fully set forth at length herein.

32.     The aforementioned acts of intentional sexual harassment, gender discrimination, hostile work environment, and retaliation while Plaintiff was an employee of Defendants, Plaintiff sustained conscious pain and suffering, substantial mental and emotional distress, shock, fright, humiliation, as well as monetary damages.

33.     As a proximate cause of Defendant's outrageous conduct, Plaintiff has been adversely affected in all aspects of his life including: employment, quality of life, and well-being. Plaintiff has found it difficult to conduct his normal, everyday pursuits. As such, Plaintiff strongly believes that Defendant's conduct has, and will, continue to adversely affect him for some time, as he has already been dealt a devastating blow to his career.

34.     In this instant action, the conduct of the Defendants was so egregious and done with such reckless and malicious disregard for any perceived risk that their actions are in violation of Plaintiff's protected rights under the Human Rights Law. In addition to all damages inflicted upon Plaintiff, and in addition to all measures of relief in which he is properly entitled to, Defendants should also be required to pay punitive damages due to their discriminatory practices, in addition to the cost of this action and all reasonable attorneys' fees.

10

## AS AND FOR A SECOND CAUSE OF ACTION
## DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE NEW
## YORK STATE HUMAN RIGHTS LAW

35.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1-34 with the same force and effect as though more fully set forth at length herein.

36.     The aforesaid acts of intentional harassment, including the inhospitable work environment for disabled persons created by Defendants, and carried out by its officers, directors, supervisors, and or employees, violated Plaintiffs rights as provided under New York State Human Rights Law- Executive Law Section 290 *et seq.*

37.     As a consequence of Defendant's egregious conduct towards Plaintiff on account of his disability, Plaintiff was forced to endure a hostile work environment upon his return, as well as undue retaliation from the time of his illness through the moment when he was unjustly and wrongfully terminated. Due to such conduct, Plaintiff was forced to sustain conscious pain and suffering, substantial mental and emotional distress, shock, fright, humiliation, and a loss of monetary income.

38.     As a proximate result of Defendant's conduct, Plaintiff has been adversely affected personally and professionally. Defendants have hindered Plaintiff's employment opportunities, injured his well-being, decreased his quality of life. As such, Plaintiff has found it difficult to engage in his ordinary life pursuits. Plaintiff believes Defendants' conduct complained of herein has and will continue to have an irreparably devastating effect upon his career, effects which Plaintiff alleges to be in the amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact.

11

39.     Here, the conduct of Defendants was so egregious and was done so clearly with malice and/or reckless indifference in the face of a perceived risk that its actions would violate Plaintiff's protected rights under the Human Rights Law, that, in addition to all the damages inflicted upon Plaintiff, and in addition to all the measure of relief to which Plaintiff may be properly be entitled to herein, Defendants should also be required to pay punitive damages for their outright discriminatory conduct in the further amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, in order to deter it and others similarly situated from engaging in such conduct in the future.

40.     Plaintiff, therefore, seeks, including, among other things, monetary losses and money damages for the emotional harm inflicted upon him equal to an amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, and punitive damages, plus the costs of this action as well as reasonable attorney's fees on this cause of action based on the lodestar method as has been judicially established and accepted when attorney's fees are provided by the law.

**AS AND FOR A THIRD CAUSE OF ACTION**
**INTENTIONAL RETALIATION IN VIOLATION OF THE NEW YORK STATE**
**HUMAN RIGHTS LAW**

41.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 40 inclusive, with the same force and effect as though more fully set forth at length herein.

42.     The aforesaid acts of intentional retaliation against Plaintiff arise directly because of his developed disability, his gender, and because of Defendant's systematic practices which led to a hostile work environment, enforced by its agents, officers, directors, supervisors,

12

managers and/or employees, violated Plaintiffs rights as provided under New York State Human Rights Law - Executive Law Section 290 *et. seq.*.

43.     As a consequence of Defendants retaliation, Plaintiff sustained conscious pain and suffering, great mental distress, shock, fright and humiliation, and incurred monetary loss, including adverse employment actions and wrongful termination.

44.     As a proximate result of Defendants' conduct, Plaintiff has been adversely affected in his employment, his well-being, in the quality of his life, and has found it difficult to engage in normal, everyday pursuits. Further Plaintiff believes Defendants' conduct complained of herein has and will continue to have an irreparably devastating effect upon his career, effects which Plaintiff alleges to be in the amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact.

45.     Here, the acts of Defendants were so egregious and were done so clearly with malice and/or reckless indifference in the face of a perceived risk that its actions would violate Plaintiff's protected rights under the Human Rights Law, that, in addition to all the damages inflicted upon Plaintiff and in addition to all the measure of relief to which Plaintiff may properly be entitled herein, Defendants should also be required to pay punitive damages to punish it for its discriminatory conduct in the further amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, in order to deter it and others similarly situated from engaging in such conduct in the future.

46.     Plaintiff, therefore, seeks, including, among other things, monetary losses and damages stemming from the emotional harm inflicted upon his in the amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact. In addition, Plaintiff seeks punitive damages, plus the costs of this action as well as reasonable attorney's fees on this cause of action.

13

## AS AND FOR A FOURTH CAUSE OF ACTION
### AIDING IN DISCRIMINATION ON THE BASIS OF SEX AND SEXUAL ORIENTATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

47.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 46 inclusive, with the same force and effect as though more fully set forth at length herein.

48.     Defendants are an "employer" within the meaning of the Human Rights Law § 296(1).

49.     At all relevant times hereto, Defendants have employed and continues to employ more than four (4) people, and accordingly is an "employer" within the definition of the Human Rights Law.

50.     Defendants intentionally discriminated against Plaintiff on account of his sex/gender and sexual orientation in violation of the Human Rights Law, by engaging in or otherwise permitting a course of unwelcome actions, including, but not limited to intentional mistreatment and wrongful termination.

51.     Before Plaintiff was allegedly accused of sexual harassment by an anonymous person for engaging in a consensual conversation with another colleague on their personal, recreational time, Plaintiff had a stellar job record, had never been subject to discipline, and had led his store to increased profits. Then, suddenly, and without warning, Plaintiff was terminated without any investigation or notice. Ironically, the female co-worker involved walked away unscathed.

52.     Such course of conduct was sufficiently severe and pervasive to alter the terms, conditions and privileges of Plaintiff's employment.

14

53.     Such course of conduct unreasonably interfered with Plaintiff's ability to perform his job, and the complained of conduct constituted unequal treatment on the basis of sex/gender and sexual orientation.

54.     Defendants are liable for the complained-of acts pursuant to Human Rights Law § 296(1)(a).

55.     As a proximate result of Defendants' acts of unlawful discrimination, Plaintiff endured physical pain, emotional pain, emotional suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of personal dignity, loss of self-esteem, loss of career fulfillment, embarrassment, humiliation and harm to his reputation.

56.     As a proximate result of Defendants' acts of unlawful discrimination, Plaintiff has suffered, and continues to suffer, substantial losses incurred in loss of past and future earnings and other monetary benefits.

57.     As a consequence of Defendants' retaliation, Plaintiff sustained conscious pain and suffering, great mental distress, shock, fright and humiliation, and incurred monetary loss, including adverse employment actions and wrongful termination.

58.     As a proximate result of Defendants' conduct, Plaintiff has been adversely affected in his employment, his well-being, in the quality of his life and in his normal life's pursuits, and Plaintiff believes Defendants' conduct complained of herein has and will continue to have an irreparably devastating effect upon his career, effects which Plaintiff alleges to be in the amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact.

59.     Here, the acts of Defendants were so egregious and were done so clearly with malice and/or reckless indifference in the face of a perceived risk that its actions would violate Plaintiff's protected rights under the Human Rights Law, that, in addition to all the damages inflicted upon Plaintiff, and in addition to all the measure of relief to which Plaintiff may

15

properly be entitled herein, Defendants should also be required to pay punitive damages to punish it for its discriminatory conduct in the further amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, in order to deter it and others similarly situated from engaging in such conduct in the future.

60.     Plaintiff, therefore, seeks, including, among other things, monetary damages for the emotional harm inflicted upon his in the amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, and punitive damages, plus the costs of this action as well as reasonable attorney's fees on this cause of action based on the lodestar method as has been judicially established and accepted when attorney's fees are provided by the law.

## AS AND FOR A FIFTH CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW §201-D

61.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs 1 through 60  inclusive, with the same force and effect as though more fully set forth at length herein.

62.     New York Labor Law §201-d prohibits discrimination against the engagement in certain activities.

63.     Plaintiff was discriminated against for engaging in a "recreational activity" under the New York Labor Law.

64.     Plaintiff engaged in a conversation outside of his employment in which he received no compensation for.

65.     Making plans to go fishing and go to the beach are generally considered activities which people engage in for recreational purposes.

66.     Plaintiff engaged in a conversation with a colleague on the social media platform Facebook, wherein he and a colleague discussed plans to go fishing and go to the breach outside

16

65.    Plaintiff engaged in this Facebook conversation entirely outside of his place of employment and did not discuss any matters relating to his employment. Plaintiff received no compensation for engaging in this conversation.

66.    Plaintiff engaged in this recreational Facebook conversation off of the employer's premises.

67.    Plaintiff engaged in the recreational Facebook conversation without use of Defendant's equipment or other property, using his own piece of technology.(i.e. compute, smart phone, tablet, etc.).

68.    Plaintiff's recreational activity did not create a material conflict of interest related to the Defendants' trade secrets, proprietary information or other proprietary or business interest. In fact, the Defendant's business and/or work matters were not discussed at all during this conversation had over Facebook.

69.    By engaging in the recreational activity, Plaintiff was not in violation of a provision of a collective bargaining agreement concerning ethics, conflicts of interest, potential conflicts of interest, or the proper discharge of official duties.

**WHEREFORE**, Plaintiff requests judgment against Defendants:
    (a) for damages in an amount to be determined at trial;
    (b) the costs of this action; including reasonable attorneys' fees;
    (c) punitive damages;
    (d) such other and further relief as the Court may deem just and proper.

Dated: New York, New York
      June 29, 2016

                Daniel Szalkiewicz & Associates, P.C.

                By: Daniel S. Szalkiewicz, Esq.

17

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YOK
COUNTY OF ROCKLAND

---

JAMES MACLEARY,

        Plaintiff,

    vs.

CORAM, LLC d/b/a CORAM CVS/SPECIALTY
INFUSION SERVICES d/b/a CVS,

        Defendants.

Index No. 032359/2016

---

## NOTICE OF FILING NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that on this date Coram Specialty Infusion Services, Inc. d/b/a Coram CVS/specialty infusion services (improperly pleaded as "Coram, LLC d/b/a Coram CVS/Specialty Infusion Services d/b/a CVS") (hereinafter "Coram" or "Defendant") filed a Notice of Removal of the above entitled action with the Clerk of the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1441 and 1446. A copy of Defendant's Notice of Removal is attached hereto as Exhibit 1.

Dated: September 22, 2016
       Newark, New Jersey

                     LITTLER MENDELSON, P.C.
                     One Newark Center, 8th Floor
                     Newark, New Jersey 07102-5311
                     Telephone: 973.848.4734
                     Facsimile: 973. 556.1691
                     Email: mgilroy@littler.com

          BY:    *s/ Marcy A. Gilroy*
                  Marcy A. Gilroy, Esq.

                  *Counsel for Defendant*
                  *Coram Specialty Infusion Services, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of September 2016, I electronically filed the foregoing with the Clerk of the Court by using the E-File system and, as a result, a correct copy of the foregoing has been furnished by the court via electronic mail to:

Daniel S. Szalkiewicz, Esq.
Daniel Szalkiewicz & Associates, P.C.
7 Dey Street, Suite 900B
New York, New York 10007
Telephone: 212.706.1007
Facsimile: 914.500.2315
daniel@lawdss.com

_s/ Marcy A. Gilroy_
Marcy A. Gilroy, Esq.

# EXHIBIT C



# Delaware

**PAGE   1**

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT
COPIES OF ALL DOCUMENTS FILED FROM AND INCLUDING THE RESTATED
CERTIFICATE OR A MERGER WITH A RESTATED CERTIFICATE ATTACHED OF
"CORAM SPECIALTY INFUSION SERVICES, INC." AS RECEIVED AND FILED
IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

RESTATED CERTIFICATE, FILED THE FIRST DAY OF JULY, A.D.
2010, AT 9:20 O'CLOCK P.M.

2175694   8100X

141007177

You may verify this certificate online
at corp.delaware.gov/authver.shtml

Jeffrey W. Bullock, Secretary of State

AUTHENTICATION: 1574737

DATE: 07-29-14

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 09:20 PM 07/01/2010*
*FILED 09:20 PM 07/01/2010*
*SRV 100712115 - 2175694 FILE*

RESTATED CERTIFCATE OF INCORPORATION

OF

CORAM SPECIALTY INFUSION SERVICES, INC.

Coram Specialty Infusion Services, Inc., a Delaware corporation (the "Corporation"), does hereby certify as follows:

1.      The name of the Corporation is Coram Specialty Infusion Services, Inc.  The Corporation was incorporated under the name "Center Acquisition No. 14, Inc."  The original Certificate of Incorporation (as amended, the "Certificate of Incorporation") of the Corporation was filed with the Secretary of State of the State of Delaware on October 18, 1988.

2.      Pursuant to Section 245 of the General Corporation Law of Delaware, this Restated Certificate of Incorporation integrates into a single instrument all of the provisions of the Certificate of Incorporation which are in effect and operative as a result of having theretofore been filed with the Secretary of State of the State of Delaware as certificates of amendment to the Certificate of Incorporation.

3.      This Restated Certificate of Incorporation only restates and integrates and does not further amend the provisions of the Certificate of Incorporation as theretofore amended, and there is no discrepancy between those provisions and the provisions of this Restated Certificate of Incorporation.

4.      The terms and provisions of this Restated Certificate of Incorporation have been duly adopted pursuant to the provisions of Section 245 of the General Corporation Law of Delaware.

5.      The text of the Certificate of Incorporation is hereby restated to read in its entirety as follows:

FIRST: The name of the corporation is: Coram Specialty Infusion Services, Inc.

SECOND: The address of the registered office of Coram Specialty Infusion Services, Inc. (hereinafter, the "Corporation") in the state of Delaware is 2711 Centerville Road, Suite 400, City of Wilmington 19808, County of New Castle. The name of the Corporation's registered agent at such address is Corporation Service Company.

THIRD: The purpose for which the Corporation is organized is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware.

FOURTH: The total number of shares of capital stock which the Corporation is authorized to issue is Five Hundred (500) shares of common stock, $0.01 par value per share (the "Common Stock").

FIFTH: The existence of the Corporation shall be perpetual.

004709-0008-13889-Active.12070707.6

2

SIXTH: For the management of the business and for the conduct of the affairs of the Corporation, and in further definition, limitation, and regulation of the powers of the Corporation and of its directors and of its stockholders or any class thereof, as the case may be, it is further provided:

1.      The management of the business and the conduct of the affairs of the Corporation shall be vested in its Board of Directors. The number of directors which shall constitute the whole Board of Directors shall be fixed by, or in the manner provided in, the Bylaws.

2.      After the original or other Bylaws of the Corporation have been adopted, amended, or repealed, as the case may be, in accordance with the provisions of Section 109 of the General Corporation Law of the State of Delaware, and, after the Corporation has received any payment for any of its stock, the power to adopt, amend, or repeal the Bylaws of the Corporation may be exercised by the Board of Directors of the Corporation; provided, however, that any provision for the classification of directors of the Corporation for staggered terms pursuant to the provisions of subsection (d) of Section 141 of the General Corporation Law of the State of Delaware shall be set forth in an initial bylaw or in a Bylaw adopted by the stockholders entitled to vote of the Corporation unless provisions for such classification shall be set forth in this certificate of incorporation.

3.      Whenever the Corporation shall be authorized to issue only one class of stock, each outstanding share shall entitle the holder thereof to notice of, and the right to vote at, any meeting of stockholders.

SEVENTH: The personal liability of the directors of the Corporation is hereby eliminated to the fullest extent permitted by the General Corporation Law of the State of Delaware, as the same may be amended and supplemented.

EIGHTH: The Corporation shall, to the fullest extent permitted by Section 145 of the General Corporation Law of the State of Delaware, as the same may be amended and supplemented, indemnify any and all persons whom it shall have power to indemnify under said section from and against any and all of the expenses, liabilities or other matters referred to in or covered by said section, and the indemnification provided for herein shall not be deemed exclusive of any other rights to which those indemnified may be entitled under any Bylaw, agreement, vote of stockholders or disinterested directors or otherwise, both as to action in his official capacity and as to action in another capacity while holding such office, and shall continue as to a person who has ceased to be a director, officer, employee, or agent and shall inure to the benefit of the heirs, executors, and administrators of such a person.

NINTH: From time to time any of the provisions of this certificate of incorporation may be amended, altered, or repealed, and other provisions authorized by the laws of the State of Delaware at the time in force may be added or inserted in the manner and at the time prescribed by said laws, and all rights at any time conferred upon the stockholders of the Corporation by this certificate of incorporation are granted subject to the provisions of this Article Ninth.

TENTH: Pursuant to Section 211(e) of the General Corporation Law of Delaware, the Directors of the Corporation shall not be required to be elected by written ballots.

3

IN WITNESS WHEREOF, the Corporation has caused this Restated Certificate of Incorporation to be duly executed this ___July 1___, 2010.

By; _____

Name: Robert T. Allen

Title:  President, Chief Financial Officer and Treasurer

[Coram Specialty Infusion Services, Inc.]

# EXHIBIT D



**Employee Profile**

**James Macleary – 1195512**

This page contains private and potentially sensitive details about this employee. You are expected to use discretion when accessing and using this information.

Personal Details   **Job History**   Licenses and Certifications

### Employment Summary

| | |
|---|---|
| Hire Date | Jul 27, 2009 |
| Service Date | Jul 27, 2009 [6 Year(s) 0 Month(s)] |
| Manager | |

### Current Assignment Data

| | |
|---|---|
| Company | 217 (Coram Specialty Infusion) |
| Business Unit | CMARK (Caremark) |
| Department | 97257 (TOTOWA IV COS) |
| Location | OF331 (NJ - Totowa - NJ005) |
| Cost Center | 406719 |

### Employee Attributes

No information is available.

### Performance Summary

| | |
|---|---|
| Next Review | No information is available. |
| Performance Rating | Mar 29, 2015: ME |
| | Dec 31, 2013: ME |
| | Mar 31, 2013: ME |

### Job and Base Compensation History

| Effective Date | Action | Job Code | Grade | Base Compensation |
|---|---|---|---|---|
| Jul 01, 2015 | Termination (Gross Violation) | 690229 (Sr Manager,Branch Op... | 110 | USD 135,044.32 (Annu... |
| May 24, 2015 | Data Change (Data Change) | 690229 (Sr Manager,Branch Op... | 110 | USD 135,044.32 (Annu... |
| Mar 29, 2015 | Pay Rate Change (Merit) | 690229 (Sr Manager,Branch Op... | 110 | USD 135,044.32 (Annu... |
| Jan 19, 2015 | Data Change (Correction) | 690229 (Sr Manager,Branch Op... | 110 | USD 131,430.00 (Annu... |
| Jan 19, 2015 | Position Change (Cost Center Ch... | 690229 (Sr Manager,Branch Op... | 110 | USD 131,430.00 (Annu... |
| Jan 19, 2015 | Return from Leave (Return From... | 690229 (Sr Manager,Branch Op... | 110 | USD 131,430.00 (Annu... |
| Dec 21, 2014 | Data Change (Tax Location Cha... | 690229 (Sr Manager,Branch Op... | 110 | USD 131,430.00 (Annu... |
| Oct 02, 2014 | Leave of Absence (Health Reaso... | 690229 (Sr Manager,Branch Op... | 110 | USD 131,430.00 (Annu... |
| Oct 02, 2014 | Suspension (Suspen-Leave Appro... | 690229 (Sr Manager,Branch Op... | 110 | USD 131,430.00 (Annu... |
| Aug 17, 2014 | Data Change (Correction) | 690229 (Sr Manager,Branch Op... | 110 | USD 131,430.00 (Annu... |
| Aug 17, 2014 | Promotion (Promotion) | 690078 (Director,Infusion Ops I... | 111 | USD 131,430.00 (Annu... |
| May 25, 2014 | Data Change (Correction) | 690229 (Sr Manager,Branch Op... | 110 | USD 131,430.00 (Annu... |
| May 25, 2014 | Data Change (Conversion) | 690106 (Manager,Branch Infusi... | 109 | USD 131,430.00 (Annu... |
| Apr 28, 2014 | Transfer (Transfer) | 690106 (Manager,Branch Infusi... | 109 | USD 131,430.00 (Annu... |
| Mar 31, 2014 | Pay Rate Change (Merit) | 690106 (Manager,Branch Infusi... | 109 | USD 131,430.00 (Annu... |
| Jul 27, 2009 | Hire (Acquisition) | CNV (Conversion Value) | CNV | USD 120,000.00 (Annu... |